FILED

11:13 am, 1/9/18
Stephan Harris
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ROBERT M. LANE,<br><br>Plaintiff,<br><br>vs.<br><br>LUCAS E. BUCKLEY, et al.,<br>Defendants. | Case No. 15-CV-155F |

## ORDER

This matter is before the Court on Defendant Lane's Motion for Attorney Fees. (Doc. 177). In response, Plaintiff filed a combined opposition, request for stay pending appeal, and request for evidentiary hearing. (Doc. 183). The Court has reviewed Defendant's motion, Plaintiff's response and motions, and Defendant's reply. For the following reasons, the Court finds Plaintiff's request for stay pending appeal is DENIED, Plaintiff's request for evidentiary hearing is DENIED, and Defendant Lane's Motion for Attorney Fees is GRANTED.

## PROCEDURAL BACKGROUND

On May 11, 2015, Plaintiff Robert M. Lane filed a *pro se* First Amended Complaint in Maricopa County Superior Court alleging six separate counts against various Defendants. Specifically as to Defendant Patricia E. Lane he alleged: Breach of Fiduciary Duty–Count I (Matthew W. Lane, Patricia E. Lane, and Colleen Lane); Fraud and Misrepresentation–Count II (Patricia E. Lane and Colleen Lane); Conspiracy to Commit a Fraudulent Scheme–Count VI (All Defendants); Rescission and Restitution–Count VII (Lucas E. Buckley, Hathaway and Kunz, P.C., Patricia E. Lane and DFWU,

LLC); Fraudulent Transfers-Count VIII (Lucas E. Buckley, Hathaway and Kunz, P.C., Patricia E. Lane and DFWU, LLC); and Breach of Contract Enforced by a Third Party Beneficiary-Count IX (Patricia E. Lane). (Doc. 1-1 at 2-27). On June 17, 2015, Defendants timely removed this case to the U.S. District Court for the District of Arizona. (Doc. 1-1 at 5-7). Defendants then filed motions to have this case transferred to the District of Wyoming. (Docs. 7, 9). On September 3, 2015, the Arizona District Court granted the Defendants' motion to transfer the case to the District of Wyoming. (Doc. 37).

On September 22, 2015, the Court denied Plaintiff's Motion for Preliminary Injunction. (Doc. 44). Plaintiff appealed that order, which caused the Court to stay the case pending the appeal. The Court granted the motion to dismiss on November 10, 2015. (Docs. 52, 57). On April 8, 2016, the Tenth Circuit Court of Appeals affirmed the Court's decision denying Plaintiff's Motion for Preliminary Injunction. (Doc. 62). On April 13, 2016, the Court lifted the stay in this case. (Doc. 63).

The Court then attempted to set a schedule in this matter. The Court continued the scheduling for several months to allow Plaintiff to obtain counsel. (Doc. 87, 88, 90, 94). Plaintiff finally obtained counsel, and on November 29, 2016, the Court entered a scheduling order. (Doc. 96). The IPT provided Plaintiff until December 13, 2016 to file his motion to amend. (*Id.*). Plaintiff failed to file his Motion for Leave to File Second Amended Complaint until December 22, 2016. (Doc. 97). The Magistrate Judge denied the motion as untimely. (Doc. 100). Plaintiff did not appeal that decision.

The case progressed and Plaintiff stipulated to the dismissal of Counts I and II with prejudice. (Docs. 107, 108). On April 13, 2017, the Court dismissed with prejudice Count VI - Conspiracy to Commit a Fraudulent Scheme. (Doc. 120). On May 16, 2017, Plaintiff voluntarily dismissed his legal malpractice claims in Counts III, IV, and V. (Docs. 125, 130).

At that time, the remaining claims were against Defendant Patricia E. Lane ("Lane")[1] for Rescission and Restitution-Count VII; Fraudulent Transfers-Count VIII; and Breach of Contract Enforced by a Third Party Beneficiary-Count IX. On July 3, 2017, Lane sought summary judgment on the remaining claims. (Doc. 143). Plaintiff responded and the Court heard summary judgment arguments on September 20, 2017. The Court granted Lane's motion for summary judgment and dismissed the Plaintiff's Amended Complaint on September 26, 2017. Lane now seeks attorney fees pursuant to the language in the Loan Agreement.

In response to Lane's request for attorneys' fees, Plaintiff asks the Court to stay the determination on attorneys' fees pending the appeal in this case. However, the Court finds there is no reason to delay a decision on attorneys' fees in this case and Plaintiff's request for a stay is DENIED.

## FACTUAL BACKGROUND

While the Court has previously set forth the undisputed facts in this case, the Court will restate the facts that are relevant to this motion. In 2006 Plaintiff and his wife,

---

[1] This matter involves claims among family members. Therefore the Court will refer to Defendant Patricia E. Lane as "Lane", not to be confused with Patricia A. Lane, Plaintiff and Lane's mother. For ease of reference, the Court will refer to Plaintiff Robert Lane as Plaintiff. Other members of the Lane family will be referenced by their first and last names.

Vikki Lane, were in a highly contested divorce. On March 10, 2009, the California State Court entered its Judgment of Dissolution, incorporating the terms and conditions of the Statement of Decision. (Doc. 144-1 at 37-76). The California State Court required Plaintiff to pay Vikki Lane a settlement of $250,000.00 and $6000.00/month in child support. (*Id.*).

On May 3, 2010, Plaintiff directed Brian Jones at the Bank of Jackson Hole to transfer "all securities and all but $250 cash in my IRA account at the Bank of Jackson Hole to the DFWU, LLC account." (Doc. 144-6 at 1-3). On May 13, 2010, Plaintiff sent Timothy Lane (apparently the trustee of Penobscot) and Brian Jones of Jackson State Bank an email stating "Tim, Thanks for advising me that you are transferring all but $1 from the Penobscot Enterprises Inc[.] Defined Benefit Pension Trust account at the Bank of Jackson Hole to the DFWU, LLC account as soon as possible." Doc. 144-6 at 1. Through these actions, Plaintiff invested his IRA monies into shares of DFWU, LLC. Plaintiff signed a document stating that he understood certain transactions were prohibited and that he accepted responsibility for directing the investment of his account. (Doc. 144-6 at 6-7).

On October 4, 2010, Plaintiff wrote to Brian Jones requesting a distribution from his IRA in the amount of $217,838.87, which he had been ordered to pay to Vikki Lane by the California State Court. (Doc. 144-6 at 8). Jones responded that he could not honor the request because a lien had been filed on the IRA account, that Vikki Lane did not qualify as an owner of an illiquid investment (shares of DFWU, LLC), and that a valuation of that IRA's illiquid investment was not available. (Doc. 144-6 at 9). Brian

4

Jones also provided a declaration stating the same for the California State Court proceedings. (Doc. 144-6 at 10).

The first managers of DFWU were Lane and Patricia A. Lane, (who is Lane and Plaintiff's mother), then Plaintiff's brother Timothy Lane became the manager. (Doc. 144-1 at 26-27 [Plaintiff's Answers to Interrogatories]. The undisputed evidence was that Plaintiff directed the purchase and sale of shares of money within DFWU, through emails asserting his manager (Timothy Lane) had advised him of the transfer. (Doc. 144-2 at 26-37).

On April 19, 2011, Plaintiff filed a voluntary petition for bankruptcy (Bankruptcy Petition"). *See In re Robert M. Lane, Debtor*, United States Bankruptcy Court, District of Wyoming, Case No. 11-20398. From August 2012 to October 2012, DFWU transferred $2,029,682.42 to Lane's bank account. (Doc. 144-9 at 6-20). At some point a Loan Agreement between DFWU and Lane was created. (Doc. 166-2 at 1-3). The Loan Agreement states it is dated June 23, 2010, however there is a dispute about when the Loan Agreement was actually signed and the signature itself is not dated. Lane claims she is unsure when the loan agreement was signed, but she believes it was sometime in 2012. (Doc. 166-1 at 67). Lane claims Plaintiff provided her the Loan Agreement after he transferred funds into her account, in the later part of 2012. (*Id*. at 69 [Lane Second Depo. at 68]).

The relevant language of the loan agreement provides that:

> This Loan Agreement and all issues arising hereunder shall be governed by, construed under, and enforced in accordance with the laws of the jurisdiction determined by Borrower without regard to principles of

conflict of laws. Further, any disputes or litigation regarding this loan agreement shall be settled via arbitration by an arbitrator who is a Member of the American Arbitration Association. Any legal disputes regarding this agreement shall be brought in a venue determined mutually by Borrower and Lender. The party bringing the dispute shall pay all parties' legal fees.

(Doc. 177-1 at 2).

## DISCUSSION

Lane seeks attorney fees in the amount of $129,899.00 pursuant to the attorney legal fees language in the Loan Agreement. Plaintiff claims the Loan Agreement is ambiguous. Plaintiff also claims, with no citation to any legal authority, that the requirement for payment of legal fees is a penalty clause. Additionally, Plaintiff claims that Lane's legal fees were paid from the loan proceeds, making it patently unfair for the Plaintiff to pay Lane's attorneys twice.

### *Loan Agreement Language on Legal Fees*

This is a diversity case. Lane asserts that Wyoming law applies to the attorney fees issue in this case and Plaintiff provides no alternative argument. Therefore, the Court will apply Wyoming law to the issue of attorneys' fees in this case.

The Wyoming Supreme Court has explained:

Wyoming subscribes to the American rule regarding recovery of attorneys' fees. *Board of County Commissioners of County of Platte v. State ex rel. Yeadon*, 971 P.2d 129, 132 (Wyo.1998). Under the American rule, each party is generally responsible for his own attorneys' fees. [Id. at 132-33]. A prevailing party may, however, be reimbursed for his attorneys' fees when express statutory or contractual authorization exists for such an award. *Id.*

\* \* \*

This Court's role in interpreting contractual fee-shifting provisions is to discern the intent of the contracting parties. *See DeWitt v. Balben*, 718

6

> P.2d 854, 863 (Wyo.1986). We utilize our traditional rules of contract interpretation to accomplish that result. *Id.* In discerning the meaning of a contract, our initial inquiry focuses on whether the language of the contract is clear or ambiguous. *See Treemont, Inc. v. Hawley*, 886 P.2d 589, 592 (Wyo.1994). "Courts make that determination as a matter of law." *Wolter v. Equitable Resources Energy Company, Western Region*, 979 P.2d 948, 951 (Wyo.1999); see also *Svalina v. Split Rock Land and Cattle Company*, 816 P.2d 878, 881 (Wyo.1991). This Court looks at the plain meaning of the words expressed within the four corners of a clear and unambiguous contract to determine the parties' intent. *Wolter*, 979 P.2d at 951. Of course, we are always cognizant of the necessity of giving a reasonable construction to the contract language. *Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 956 (Wyo.1999).

*Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 949-950 (Wyo. 2000).

Plaintiff claims the legal fees language is ambiguous because it unclear whether the fee language relates to the fees incurred in arbitration or in litigation or both. Plaintiff argues that a reading of the provision indicates the legal fees award applies only to arbitration, which would result in lesser legal fees than litigation.

The Court finds the language of the fee provision in the Loan Agreement is unambiguous. As previously noted, the relevant language of the Loan Agreement provides:

> This Loan Agreement and all issues arising hereunder shall be governed by, construed under, and enforced in accordance with the laws of the jurisdiction determined by Borrower without regard to principles of conflict of laws. Further, any disputes or litigation regarding this loan agreement shall be settled via arbitration by an arbitrator who is a Member of the American Arbitration Association. Any legal disputes regarding this agreement shall be brought in a venue determined mutually by Borrower and Lender. The party bringing the dispute shall pay all parties' legal fees.

(Doc. 177-1 at 2).

In this case, Plaintiff chose to proceed in this matter by way of court action, rather than arbitration. Plaintiff's reading would negate the legal fees provision by allowing a party to bring a matter in a court, rather than through arbitration proceeding. The Court finds that the clear and unambiguous language of the Loan Agreement provides that the party bringing the dispute (including proceedings in a court, rather than arbitration) shall be responsible for all parties' legal fees. In this case, Plaintiff is responsible for Lane's legal fees, including attorneys' fees related to the dispute about the Loan Agreement.

Plaintiff has failed to provide any law to support his argument that this provision is a penalty clause and is therefore unenforceable. As a result the Court does not find this argument prevailing. Additionally, Plaintiff claims Lane paid her attorneys with the loan proceeds and that requiring him to pay the fees based on the language in the Loan Agreement is essentially asking him to pay for Lane's attorneys twice. However, Plaintiff failed to offer any evidence that the loan proceeds paid for Lane's attorneys. Also, this was a loan, not a gift, so at some point in time Lane is required to repay the loan. Finally, as the Court has previously noted, Plaintiff lacks the "clean hands" necessary to assert equitable relief in this case.

***Reasonableness of the Requested Fees***

In one paragraph of his opposition, Plaintiff claims that the billing statements are replete with block billing and it is impossible to ascertain how much time was spent on individual tasks. Plaintiff asks the Court to allow him to depose the billing attorneys regarding the amount they billed or to have a billing audit conducted. Plaintiff failed to provide any evidentiary support for these arguments

Wyoming employs the federal lodestar test to determine whether an attorneys' fees award was reasonable. *Cline*, 998 P.2d at 951 (citations omitted). "The two factors which are examined under the lodestar test are: '(1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward.'" *Id.* (citing *Johnston v. Stephenson*, 938 P.2d 861, 862–63 (Wyo. 1997)).

Plaintiff failed to provide an affidavit or other statement from a qualified person regarding the billing in this case. Plaintiff also failed to provide any case law supporting his position that he should be allowed to depose the attorneys regarding their billing statements. In fact, Plaintiff failed to provide any argument that the rate and hours were not reasonable. Additionally, Plaintiff failed to properly request additional time to supply this information. Rather, he requested it as an aside as part of his response.

In contrast, Lane's attorneys provided their full billing statements and also provided an affidavit of another practitioner stating her opinion that the rate and hours were reasonable and appropriate for the work involved. While the Court questions whether Lane's attorneys' hourly rate is reasonable, there is no evidence in the record to suggest it is not a reasonable rate. Additionally, there is nothing in the record to indicate the number of hours was not reasonable.

The overall fee request of $129,899.00 for a case that was decided on summary judgment seems high. However, this case involved a significant amount of attention and work by Lane's attorneys. At the time of the request for attorney fees, there were 177 docket entries. Early in the case, Lane's attorneys were dealing with Plaintiff in a pro se

capacity and then had to restart the case once Plaintiff obtained counsel. While Plaintiff was proceeding pro se, he filed an interlocutory appeal of the Court's denial of his motion for preliminary injunction, which required Lane to respond in the Tenth Circuit. There were also several discovery disputes in this case, increasing the cost of litigation. The summary judgment in this case included more than 900 pages of exhibits, which was necessary to explain Plaintiff's actions during his divorce proceedings and bankruptcy proceedings that led to the creation of the Loan Agreement. This summary required Lane's attorneys to review Lane's voluminous bankruptcy case, which contained more than 1600 docket entries. Based on this information, the Court finds that Lane's attorneys' hours are reasonable.

For all these reasons, the Court finds that requested amount of $129,899.00 is a reasonable amount of attorney fees incurred in this litigation.

## CONCLUSION

For the above stated reasons, the Court finds that it is not appropriate to stay the decision on attorney fees in this case. The Court further finds that pursuant to the Loan Agreement Plaintiff is responsible for Lane's attorneys' fees. The Court finds Plaintiff failed to establish that an evidentiary hearing is necessary in this matter. Finally, the Court finds that $129,899.00 is a reasonable amount of attorneys' fees.

IT IS ORDERED that Plaintiff's Request to Stay Pending Appeal and Request for Evidentiary Hearing (Doc. 183) are DENIED.

IT IS FURTHER ORDERED that Defendant Lane's Motion for Attorney Fees (Doc. 177) is GRANTED.

IT IS FINALLY ORDERED that judgment is entered against Plaintiff Robert M. Lane in favor of Defendant Patricia E. Lane in the amount of $129,899.00 for reasonable attorneys' fees in this case.

Dated this \_\_\_9\_\_\_ day of January, 2018.

_____
NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE